THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

BILLIE ALLEN,

-v-

THE UNITED STATES OF AMERICA,

FILED

JUL 19 2013

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

**8 : 13 -cv- 0 2 7 1 JMS -MJD**

--------------------------------------------------------------------------------

BILLIE ALLEN CHALLENGES THE CONSTITUTIONALITY
OF HIS DETENTION ON FEDERAL DEATH ROW, THE
UNDERLYING STATUE AND CHALLENGES THE UNITED
STATES GOVERNMENT TO PROVE THAT IT HAS THE
JURISDICTION TO HOUSE HIM IN A UNIT AND UNDER
A PUNISHMENT THAT IS RESERVED FOR THOSE WHO
HAVE BEEN INDICTED AND/OR CHARGED FOR  A
CAPITAL CRIME BY A GRAND JURY: FOR WHICH MR.
WAS NOT.

This is a pro se motion where Petitioner Billie Allen, pursuant to 28 U.S.C.S.:2241, comes before this court to challenge the constitutionally of his detention since this is the district in which the detention is being carried out; giving this court the jurisdiction to hear this matter. He too challenges his custody/detention under the **Fifth Amendment Guarantee**, which states that **"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand jury."** Which was not done in this case. (This denial making it a clear violation of Mr. Allen's **Fifth Amendment Guarantee**).

PRELIMINARY STATEMENT

Billie Allen was convicted of capital murder and related charges and was sentenced to death. He is serving that sentence at Terre Haute United State's Penitentiary; Federal Death Row Unit. He will continue to do so until an execution date is set or he's executed. Mr. Allen challenges his custody as unconstitutional and a violation of his **Fifth Amendment Guarantee** that **"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."** The government conceded that they violated Mr. Allen's **Fifth Amendment Guarantee,** but that the violation was harmless. The Eigth Circuit would echo that the violation took place and that though the Grand Jury

didn't return an indictment which sought approval to seek the death penalty; had it been asked to do so, it would have. A simple guess as to what the Grand Jury would've done shouldn't hold any weight in this court when the violation took place when the government chose to bypass the Grand Jury. It would then allow the jury to sentence Mr. Allen to a sentence that the Grand Jury didn't even indict him for, and he would then be turned over to the custody of prison officials who have no right to detain him since he wasn't properly indicted for the crime reserved for the prisoners they house in the unit he's housed in.

There is a narrow safety valve that permits federal sentences to be attacked collaterally under 2241 when a motion under 2255 is "inadequate or ineffective to test the legality of his detention." **See in re Davenport,** 147 F.3d 605, 608 (7th Cir. 1998). This is one of those cases where we feel that only this court can determine whether Mr. Allen is in custody in violation of the Constitution or laws or treaties of the United States.

## INTRODUCTION AND OVERVIEW

Section **2241** is different from **2255** and provides a unique relief. **2241** claims contemplates conditions of confinement and also provides relief in extraordinary circumstances, but only if the relief granted by **2255** is inadequate or ineffective to test the legality of the prisoner's detention.

Though this petition might appear to be attacking the conviction or sentence under **2255**, if a petitioner genuinely proceeds under **2241**, the court must honor the request to consider the petition under **2241. Collins v. Holinka, 510 F.3d at 667. United States v. Wyatt, 672 F.3d 519, 523** (7th Cir. 2012). "[A] **2241** petition shouldn't be re-characterized as a 2255 motion because courts must respect a litigant's decision to invoke a certain statue and must resolve the case under that law." **Wyatt v. United States, 574 F.3d 455, 460** (7th Cir. 2009).

This court is the proper avenue to challenge Mr. Allen's custody because it has jurisdiction to entertain the motion. **See Garza v. Lappin,** 253 F.3d 918, 921 (7th Cir. 2001) (finding that, even when **2241** is being used to challenge the sentence, the action must be brought in the district of the prison).

Mr. Allen feels that one facing possible extinction through the process of lethal injection is what can be considered an "extraordinary circumstance", and this court, unlike the Eighth Cir. is in a unique position to examine why and how he is in custody in violation of the Constitution and the laws of the United States.

The root of Mr.Allen's challenges to his confinement lie in the law itself and the Fifth Amendment guarantee that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Mr. Allen is one of the few men who sits on Federal death Row, awaiting a possible execution date; yet he was never indicted by his Grand Jury for capital murder. (They were never told that Mr. Allen's case carried a possible death sentence and that they were to return an indictment authorizing whether or not it would be a punishment that they felt he should face). Mr Allen feels that the only way to fully understand how is Constitutional rights were violated and how that violation has lead to him being in custody in violation of the Constitution is to examine the Grand Jury Clause of the Fifth Amendment, its history, and the impact of the violation.

## THE BIRTH OF THE GRAND JURY

The English grand jury was first employed more than 800 years ago. 8 **See** United States v. Dionisio, 410 U.S. 1, 17 n. 15, 35 L. Ed. 2d 67, 93 S. Ct. 764 (1973); Costello, 350 U.S. at 362; **Exparte Bain**, 121 U.S. 1, 11, 30 L. Ed. 849, 7 S.Ct. 781 (1887). It's origins belie its modern role as intermediary between the people and their government.

During its first hundred years, the grand jury did not function as a shield to protect the accused, but more as a sword to be wielded on behalf of the Crown. Indeed, the grand jury was "oppressive and much feared by the common people" because of its "unfettered power" and because the King would manipulated the grand juries through suggestive instructions and fines levied against grand juries that failed to reach **their quota of accusations. Schwartz, 10 AM. CRIM. L. REV. at 709;Simmons, 82 B.U.L. REV. at 6.** In this sense, the English grand jury was somewhat like a quasi-prosecutor for the King.

The first real evidence of the grand jury acting as a shield to protect the accused **[408 F.3d 1191]** was in 1681 when two London grand juries **refused to indict** the Earl of Shaftesbury and his follower Stephen Colledge; the political enemies of King Charles II. **The Trial of the Earl of Shaftesbury,** 8 How. St. Tr. 759, 771-74 (1681) **reprinted in** 5

THE FOUNDERS' CONSTITUTION 246-247; The Trial of Stephen Colledge, at Oxford, for High Treason, 8 How. St. Tr. 549, 550 (1681). The King wanted them held over for public proceedings before the grand jury, but the grand jury insisted on conducting its **inquiry in private.** The King expected a quick indictment pursuant to its charges. However, the grand jury returned the equivalent of a no-bill in the matter, defying the Crown's will in both holding private proceedings and in **its ultimate decision** not to indict. The Shaftesbury and Colledge cases established **grand jury secrecy,** which continues to be a **crucial element in grnd iuries serving as an "independent screen."** As Grand Jury secrecy became a matter of course, both judges and prosecutors maintained less liberty to "cross-examine Grnd Jurors about their findings." FRANKEL & NAFTALIS, **supra, at 10.**

American colonists would later adopt the Grand Jury as integral to the common law ststem and following the English tradictions established in the Shaftesbury and Colledge cases, grand jury secrecy remained an important part of Grand Jury proceedings in the colonies. BEALE, ET AL., **supra,** :1:3. See also YOUNGER, **supra,** at 28 (discussing the Boston Grand Juries who refused to indict editors of the BOSTON GAZETTE for libeling the the governor of Massachsetts and refusing to indict leaders of the Stamp Act Rebellion).

When the original colonies drafted their first state constitutions between 1776 and 1790, only three states guaranteed the right to a grand jury in their constitution. 12 following the adoption of the U.S. Constitution, however, eight of the thirteen original states recommended an amendment to ensure the right to a federal grand jury. In early debates over the ratification of the Constitution, before the Bill of Rights had been written, some feared that "there is no provision... to prevent the attorney-general from filing information against any person, whether he is indicted by the grand jury or not; in consequence of which the most innocent person in the commonwealth may be taken by virtue of a warrant issued in the consequence of such information...." Jon Van Dyke, The Grand Jury: Representative or Elite?, 28 HASTINGS L.J. 37, 39(1976) (quoting Abraham Holmes of the Massachusetts legislature). Because of this fear, the Grand Jury Clause, located in the Fifth Amendment, was adopted with little debate or discussion. id.

Throughout the nineteenth century, courts continued to reconize the necessity of secrecy in grand jury proceedings. **See** United States v. Providence Tribune Co., 241 F. 524, 526 (D.R.I. 1917) (holding a newspaper in contempt for publishing a grand jury proceeding and noting that secrecy is essential to the proceedings of a grand jury). This secrecy allowed grand juries to independently determine whether to indict, dispite a judges instructions.

Currently, grand juries no longer perform all the tasks that they were asked to perform in the past. Now, they are only to investigate crimes and screen indictments, and it can be said they they indict in the overwhelming number of cases brought by prosecutors. But the Grand Jury belongs to no branch of government. it is a "constitutional fixture in its own right." Williams, 504 U.S. at 47. The Fifth Amendment's guarantee to indictment by a grand jury "presupposes an investigative body 'acting independently of either prosecuting attorney or judge." Dionisio, 410 U.S. at 16-17 (footnote omitted) (quoting Stirone, 361 U.S. at 218). Thus,

"the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may **"determine alone"** the course of its inquiry..." Calandra,414 U.S. at 343.

The Grand Jury has no obligation to prepare a presentment or to return an indictment drafted by the prosecutor. The Grand Jury determines not only whether probable cause exists; but **also whether to "charge a greater offense or a lessor offense; numerous counts or a single count; and perhaps the most significant of all, A CAPITAL OFFINSE or a noncapital offense--all on the basis of the same facts."** Vasquez v. Hillery, 474 U.S. 254, 263, 88 L. Ed. 2d 598, 106 S.CT. 617 (1986). And significantly, the Grand Jury may refuse to return an indictment even "where a conviction can be obtained " id  (citing United States v. Ciambrone, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)).

## ARGUEMENT

The Grand Jury in Mr. Allen's case did not hear evidence regarding statutory aggravating circircumstances, violating his right to indictment under the Fifth Amendment. This issue would be raised on appeal and a panel of the Eighth Cir  determined that the error was reversible because it was not harmless beyond a reasonable doubt, and remanded to the district court for imposition of a life sentence,(since the grand jury wasn't aware presented with the statutory aggravating factors that are needed to charge one with a capital offense). United States v Allen, 357 F.3d 745. 758 (8th Cir. 2004) (AllenII).

The en banc court affirmed the finding that Mr. Allen was denied his right to indictment, but found that the error was harmless. In so finding, the court agreed with the panel that the proper test was whether the error was harmless beyond a reasonable doubt. The court then  specified the following test for making that determination: "Whether any rational

grand jury ... would have found the existence of the requisite mental state and one or more of the ststutory aggravating factors found by the petit jury if the grand jury had been asked to do so.

Mr. Allen was indicted and prosecuted under the Federal Death Penalty Act of 1994, which did not require the grand jury to charge the requisite **mens rea** or aggravating factors. Trial counsel would object to Mr Allen being held to answer for a capital crime when he was never indicted by one by his Grand Jury; which was his Fifth Amendment guarantee. The government could have easily went back in front of the Grand Jury, presented the statutory aggravating factors and informed the grand jury that they wanted it to return an indictment that would allow them to seek the death penalty; but they didn't.

The Fifth Amendment hasn't changed, nor has the case law governing whether one "... Shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." The government only had to look to the Supreme Court's ruling in **Russell v United States,** 369 U.S. 749, 761 (1962) and **Vasquez v. Hillery,** 474 U.S. 254, 263...(1986) to see where the Court **emphasized** the importance of the grand juries decisions such as "whether to charge a greater offense or a lessor offense; numerous counts or a single count; and perhaps the most significant of all, a capital or non-capital offense..."

In their bypassing the grand jury and the Fifth Amendment guarantee, the government violated Mr. Allen's Constitutional rights and made him answer for a crime that he was never indicted for, and has made him endure Cruel and Unusual Punishment reserved for those who have been indicted for a capital offense and sentenced to death by his being on Federal Death Row; making his custody unconstitutional.

The Eighth Cir. relies heavily on the petit juries findings that it sentenced Mr. Allen to death in determining whether the government's failure to present the grand jury with the statutory aggravating factors was harmless. It never considered was the error harmful in the sense that by sentencing Mr. Allen to death; it would make the custody of where he waited to be executed unconstitutional and that they had violated his Fifth Amendment rights to not be "held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury...", because he was not.

The court should even question its decision to rely on the petit juries decision to

impose the death sentence when the petit jury would return on two identical counts; **life** on count 1 and **death** on count 2. If anything, one can conclude that the petit jury thought that they were giving Mr Allen a life sentence to serve and then a death sentence after that since they were never instructed otherwise. The court can also look at itself in seeing there's a difference between a life sentence and a death sentence when it sentenced Mr Allen to life and then had to come back the next day to correct its own ruling.

The courts only real arguement is that had the grand jury been asked to do so; it would have returned the nessessary statutory aggravating factors to charge and seek a death sentence.

As explained earlier in The Birth Of The Grand Jury, since the secrecy of grand jury proceedings were first put in place by the grand jury; neither the prosecutor or a judge has ever been able to question them about why they do or don't indict, or whether they coose to indict on a capital or otherwise infamous crime. The grand jury's decision to indict or not is **UNREVIEWABLE IN ANY FORUM**; it's decision is final. **See Costello.** 350 U.S. at 362-363 ("No case has been cited, nor have we been able to find any, furnishing an authority for looking into and **revising** the judgement of the grand jury upon the evidence") (quoting United States v. Reed, 2 Blatchf. 435, 27 Fed. Cas. 727, 738, F. Cas. No. 16134 (C.C.N.D.N.Y. 1852). **See also** United States v. Bruce, 394 F.3d 1215, 1231 (9th Cir. 2005) ("We may not presume to correct the decisions of the grand jury... except through our judgments, any more than we can, except through our judgments, correct the prosecutorial decisions of the executive.")

This court has in the past denied cases where relief was sought pursuant to **28 U.S.C. 2241** where the petetioner was out of the court's jurisdiction to entertain the motion, the petetioner's claim challenged the conviction and not their confinement, or the court felt that the petetioner 2241 claim did not permit or justify the use of the remedy. Mr. Allen arguement rests on several facts that this court should consider when it determines whether or not to entertain this as a 2241 motion and not another challenge to his 2255.

Mr Allen wishes to seek review through the narrow safety valve that permits federal sentences to be attacked collaterally under 2241 when a motion under 2255 is "inadequate or ineffective to test the legality of his detention." **See in re Davenport,** 147 F. 3d 605, 608 (7th Cir. 1998) It is through Mr. Allen's attack on his sentence where he can show that his detention is unconstitutional, that his Fifth Amendment right to be indicted by a grand jury for a capital crime was violated when the government bypassed the grand jury, and how

Mr. Allen endures Cruel and Unusual Punishment by his being housed in a unit that's reserved for those who were properly indicted for a capital offense by their grand jury and the jury returned a sentence of death against them.

1. In ruling that the violation of Mr. Allen's Fifth Amendment rights were harmless. the Eighth Cir. in its ruling didn't consider that its decision would mean that Mr. Allen would be held in custody on charges that he was never indicted for.

2. The court didn't consider that by admitting that the government didn't present the statutory aggravating factors to the grand jury that that would mean that Mr. Allen would be held to answer for a capital crime that the grand jury was never made aware of.

3. The court didn't consider that Mr.Allen's death sentence would start as soon as he entered Terre Haute's Death Row Unit because:

a. The unit is isolated from others who have lesser sentences.

b. The unit limits your involvement in activities that one can use to help better themselves and their relationship with friends and family.

c. The unit limits your movement and you are only allowed out of the cell for less the time than those with lesser sentences.

d. The unit limits your contact with your family.

e. The unit forces one to always have on their mind the fact that they are facing death if their appeals don't go the way they hope.

all these things which Mr. Allen is forced to endure.

4. The court didn't consider whether or not, when it sentenced Mr Allen to death without his being indicted for a capital offense, if that left him open to face a "nonexistent offense." (Since it was never a punishment handed down by the grand jury.

Mr. Allen feels that this court is in the posistion to entertain this motion and that it has jurisdiction because this is the Circuit where he is being housed. Garza v. Lappin, 253 F.3d 918, 921 (7th Cir. 2001) (finding that, even when 2241 is being used to challenge the sentence, the action must be brought in the district of the prison). 28 U.S.C  2241 (c) (3) He is in custody in violation of the Constitution or laws...of the United States. That Mr Allen having a death sentence that was never handed down by his

grand jury is an "extraordinary circumstance" that this court should look into to determine whether Mr. Allen custody is unconstitutional, and whether he is in custody in violation of the Constitution and the laws of the United States; his Fifth Amendment right that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

Mr. Allen asks that if this court finds that his confindment is unconstitutional under the **FIFTH AMENDMENT GUARANTEE**, that this court would correct the error, make the government re-try Mr. Allen under the proper staute, where he will have to be sentenced to something lesser than death if convicted, and/or make the government prove that they have the jurisdiction to house him in a unit and under a sentence reserved for those who have been sentenced to death?

Mr. Allen prays for the court's consideration on this issue.

Billie Allen
26901-044
P.O. BOX 33
Terre Haute, IN.
47808